|   |   |
|---|---|
| | UNITED STATES DISTRICT COURT<br>WESTERN DISTRICT OF WASHINGTON<br>AT SEATTLE |

| | |
|---|---|
| JEFFERY L. RIXMAN,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>Defendant. | NO. C13-815-MJP-JPD<br><br><br><br>REPORT AND<br>RECOMMENDATION |

Plaintiff Jeffery[1] L. Rixman appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-33, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the Commissioner's decision be affirmed.

### I.   FACTS AND PROCEDURAL HISTORY

At the time of the administrative hearing, Plaintiff was a 52-year-old man with a high school education plus one year of college. Administrative Record ("AR") at 32, 186. His past work experience includes employment as a janitor, dark room technician, and construction

---

[1] Both parties misspell Plaintiff's first name. *Compare* Dkt. 12 at 1; Dkt. 13 at 1 *with* AR at 11, 233.

REPORT AND RECOMMENDATION - 1

laborer. AR at 187. Plaintiff was last gainfully employed in 2005. *Id*.

On April 25, 2011, he filed an application for DIB, alleging an onset date of November 30, 2004. AR at 148-49. He amended his alleged onset date to October 11, 2009, and withdrew an application for Supplemental Security Income at the administrative hearing. AR at 31-32. Plaintiff asserts that he is disabled due to posttraumatic stress disorder ("PTSD"), depression, spinal stenosis, compressed disk, arthritis, kidney problems, thyroid problems, sleep disorder, drug and alcohol addiction, rectal tear, macular degeneration, bipolar disorder, cyclothymia, hormones, and sleep apnea. AR at 185, 215.

The Commissioner denied Plaintiff's claim initially and on reconsideration. AR at 96-99, 104-05. Plaintiff requested a hearing, which took place on September 20, 2012. AR at 28-65. On December 28, 2012, the ALJ issued a decision finding Plaintiff not disabled and denied benefits based on her finding that Plaintiff could perform a specific job existing in significant numbers in the national economy. AR at 11-23. Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council, AR at 1-6, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). On May 8, 2013, Plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. 1.

## II.   JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is

REPORT AND RECOMMENDATION - 2

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)).  The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

### IV.   EVALUATING DISABILITY

As the claimant, Mr. Rixman bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§

REPORT AND RECOMMENDATION - 3

423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[2] If he is, disability benefits are denied. If he is not, the Commissioner proceeds to step two. At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities. If the claimant does not have such impairments, he is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

---

[2] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

REPORT AND RECOMMENDATION - 4

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether he can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V.     DECISION BELOW

On December 28, 2012, the ALJ found:

1. Plaintiff last met the insured status requirements of the Social Security Act on March 31, 2011 (hereinafter the "date last insured" ("DLI")).

2. Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date of October 11, 2009, through the DLI.

3. Through the DLI, Plaintiff's degenerative joint disease of the bilateral knees; degenerative changes in the cervical, lumbar spine, and sacroiliac joints; PTSD; and depression were severe.

4. Through the DLI, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5. Through the DLI, Plaintiff had the RFC to lift and carry 20 pounds occasionally and 10 pounds frequently. He could stand, walk, or sit for 6 hours in an 8-hour workday, with normal breaks. He could occasionally climb ropes, ladders, and scaffolds, and stoop, kneel, crouch, and crawl. He did not have any manipulative, visual, communicative, or environmental limitations. He could understand, remember, and perform multi-step instructions and directions. He could accept supervision and work independently. He could not have

        constant interaction with members of the public or coworkers, or work in large environments where there are a lot of people coming in and out of the workplace.

6. Through the DLI, Plaintiff could not perform any past relevant work.

7. Plaintiff was born on October 11, 1959, and was 51 years old, which is defined as an individual closely approaching advanced age, on the DLI.

8. Plaintiff has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Through the DLI, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that he could have performed.

11. Plaintiff was not under a disability, as defined in the Social Security Act, at any time from October 11, 2009, the alleged onset date, through the DLI.

AR at 13-23.

## VI.   ISSUES ON APPEAL

The principal issues on appeal are:

1. Whether the ALJ erred in discounting State agency medical opinions and other evidence of record;

2. Whether the ALJ improperly discounted Plaintiff's subjective testimony and a statement provided by lay witness Mona Kutch; and

3. Whether the ALJ's RFC assessment fails to account for all of Plaintiff's limitations.

Dkt. 12 at 2.

//

//

//

REPORT AND RECOMMENDATION - 6

VII.   DISCUSSION

A.   <u>The ALJ Properly Evaluated Conflicting Medical Evidence in Assessing Plaintiff's Physical RFC.</u>

Plaintiff argues that the ALJ misinterpreted the June 2011 opinion of Robert Hander, M.D., who evaluated his claim for the State agency at the initial level. *See* AR at 66-78. Dr. Hander found that during the period between November 30, 2004, and March 31, 2011, Plaintiff could stand and/or walk for a total of four hours in a workday. AR at 72. Another State agency medical consultant, Harris C. Faigel, M.D., reviewed Dr. Hander's findings and opined that Plaintiff retained the ability to stand/walk for a total of six hours, during the period from July 2008 through March 2011. AR at 591-92. At the reconsideration level, State agency medical consultant Dale Thuline, M.D., found in January 2012 that during the period between April 1, 2008, and March 31, 2011, Plaintiff could stand and/or walk for a total of six hours in a workday. AR at 90-91.

The ALJ found that before Plaintiff's DLI (March 31, 2011), he "retained the ability to stand and/or walk for about 6 hours in an 8-hour workday," consistent with the opinions of Drs. Thuline and Faigel and in contradiction to Dr. Hander's opinion. AR at 20. The ALJ specifically afforded "great weight" to Dr. Thuline's opinion "because it accurately reflects the overall evidence, including the objective medical findings and the claimant's activities." *Id.* Plaintiff argues that in discounting Dr. Hander's opinion that he could only stand/walk up to four hours per day, and instead relying on the opinions of Drs. Thuline and Faigel, the ALJ erred because Dr. Hander (unlike Drs. Thuline and Faigel) reviewed the entire medical file and explained his conclusions. Dkt. 14 at 4.

It is true that Dr. Faigel did not explain how reached his conclusion that Plaintiff could stand and/or walk up to six hours, and this lack of explanation is particularly curious because

REPORT AND RECOMMENDATION - 7

he purported to agree with Dr. Hander's opinion, which indicated more restrictive limitations. *See* AR at 591. But Dr. Thuline did explain his interpretation of the medical evidence, and he reviewed and summarized the medical evidence of record and Plaintiff's self-reported activities. AR at 87. Plaintiff has failed to establish that the ALJ was not entitled to resolve the conflict between Dr. Hander's opinion and Dr. Thuline's opinion in favor of Dr. Thuline's opinion, and thus no error has been established. *See Carmickle v. Comm'r of Social Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008) ("The ALJ is responsible for resolving conflicts in the medical record.").

B.  The ALJ Did Not Err in Assessing Plaintiff's Mental RFC.

Plaintiff challenges the ALJ's mental RFC in light of the Department of Veterans Affairs ("VA") disability rating and the totality of his VA medical records. First, he contends that the ALJ failed to fully consider the import of his VA disability rating. VA disability ratings are "not conclusive" for purposes of determining eligibility for Social Security Administration ("SSA") disability benefits, but the rating is nonetheless typically entitled to great weight. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2010).

The ALJ here did give significant weight to Plaintiff's VA disability rating, which was at 50% during the period before the DLI, and was increased to 70% four months after the DLI:

> The VA disability rating of 50% for the period prior to July 2011 is consistent with my finding that the claimant had some mental restrictions due to depression and PTSD for the period before the [DLI], but his restrictions were not so severe that they were 100% disabling. Given the subsequent increase in his VA disability ratings, the claimant's mental conditions appear to have worsened since the [DLI].

AR at 21. Plaintiff argues that the ALJ's analysis fails to recognize that the VA determined that his mental condition rendered him unemployable as of July 28, 2011, and that his rating that fluctuated between 70% and 100% in the months after his DLI. *See* AR at 255-56.

REPORT AND RECOMMENDATION - 8

That may be true, but the VA's determination of unemployability post-dates the DLI, and thus does not directly bear on the relevant period at issue. Although Plaintiff cites authority to support the proposition that "[m]edical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the preexpiration condition," such authority is inapposite because an administrative determination is not "inevitably rendered retrospectively," as is a medical evaluation. *See Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988). The VA finding of unemployability explicitly applies only as of July 28, 2011. Furthermore, as is noted in *McLeod*, 640 F.3d at 885, a partial (rather than total) disability rating can "cut against rather than in favor of an SSA determination that the individual could not perform remunerative work of any kind," and the ALJ here so reasoned. AR at 21 (finding that Plaintiff's mental restrictions were "not so severe that they were 100% disabling" before the DLI).

Furthermore, the State agency consultants reviewed the VA records and found that they did not establish that Plaintiff's mental symptoms were disabling. Eugene Kester, M.D., and Thomas Clifford, Ph.D., indicated that

> [Plaintiff's] mental health [symptoms] will reduce his ability to maintain concentration and workday/week. However [Plaintiff] can persist the majority of the time. . . . [Plaintiff's] psychiatric [symptoms] preclude [Plaintiff] from continual contact with the public and co-workers. However if contact is brief and superficial, [Plaintiff] can persist. . . . [Plaintiff's] mental health [symptoms] reduce his ability to adapt to changes in a competitive workplace. However, if given time and instruction, [Plaintiff] can adapt.

AR at 74-75, 92-93. *See also* AR at 593-94 (opinion of State agency consultant Henry Schniewind, M.D., affirming Dr. Kester's opinion). The ALJ gave "some weight" to the State agency opinion:

> . . . [I] note that it is somewhat vague in terms of defining the claimant's mental [RFC]. First, while it is true that the claimant['s] symptoms impaired his ability to concentrate and to adapt, his mental status examinations, which usually

REPORT AND RECOMMENDATION - 9

      showed that he exhibited normal speech, logical and organized thought processes, normal thought content, intact cognition, and fair to good insight and judgment during appointments ([AR at 312-13, 336-37, 348, 350, 354, 363, 410-11, 416-18, 420, 435]), indicate that he could understand, remember, and perform multi-step instructions and directions. Nonetheless, I note that, even if the claimant were limited to simple tasks, it would not preclude him from performing the two unskilled jobs identified by the vocational expert below. Second, I agree with Dr. Kester, Dr. Schniewind, and Dr. Clifford that the claimant had some problems interacting with people. I have accommodated the claimant by limiting him to no constant interaction with members of the public or coworkers, and to an environment where he could work independently and where there are not a lot of people coming in and out of the workplace. As noted above, the claimant was able to sustain a relationship with his friend Racine, whom he later married ([AR at 1258]). He also spent time with a few other friends ([AR at 310, 329, 397]), interacted appropriately with providers ([AR at 266-585]), used public transportation, and attended AA meetings weekly ([AR at 208]). According to his friend Racine, he did not have any difficulty getting along with his friends ([AR at 209]).

AR at 21. Plaintiff argues that the ALJ selectively cited examination findings, omitting reference to other VA treatment records showing that his PTSD and depression caused, *inter alia*, difficulty concentrating and maintaining control, and intrusive thoughts of trauma. Dkt. 14 at 6.

      The ALJ acknowledged that Plaintiff's depression and PTSD were severe impairments, however — and the records cited by Plaintiff on Reply (Dkt. 14 at 6:10-11) do not discuss any particular functional limitations caused by those impairments, nor do they necessarily contradict the ALJ's mental RFC findings nor establish that those findings are not supported by substantial evidence. Because Plaintiff has not shown that the ALJ failed to account for any evidence showing that his mental symptoms were "debilitating" during the relevant period (Dkt. 12 at 14:12-13), or that the ALJ erred in assessing the State agency medical opinions regarding his mental RFC, he has failed to identify an error in the ALJ's mental RFC findings.

//

//

C. <u>The ALJ Provided Clear and Convincing Reasons to Discount Plaintiff's Credibility.</u>

The ALJ offered a number of reasons to discount the credibility of Plaintiff's subjective testimony, namely lack of corroboration in the medical record (AR at 17-18), minimal treatment (AR at 17-18) for allegedly disabling conditions, improvement with treatment (AR at 18), failure to comply with treatment recommendations (AR at 18-19), and inconsistent activities (AR at 17-19). Absent evidence of malingering, an ALJ's reasons to discount a claimant's subjective testimony must be clear and convincing. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

Plaintiff assigns error to some of the ALJ's credibility findings, specifically her findings that (1) he failed to comply with treatment recommendations, (2) his activities were inconsistent, and (3) the medical evidence failed to corroborate his testimony of mental symptoms. Dkt. 12 at 14-16. The Court will address each factor in turn.

1. *Failure to Comply with Treatment Recommendations*

The ALJ cited evidence showing that on multiple occasions, Plaintiff complained of a flare-up in symptoms during a time that he had failed to take his medication. AR at 18-19 (citing AR at 298, 326, 339, 365-66, 369-70). This is a clear and convincing reason to discount Plaintiff's credibility. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). Although Plaintiff contends that his failure to comply with his mental-health treatment regimen is "a component of his (mental) disability" (Dkt. 12 at 15), he cites no support for this contention in the record and fails to acknowledge that the ALJ cited evidence of his failure to comply with treatment recommendations for both physical and mental symptoms.

2. *Inconsistent Activities*

The ALJ noted that Plaintiff's physical symptoms "did not prevent him from continuing to work as a handyman, which required him to perform repair work lying under a sink and

REPORT AND RECOMMENDATION - 11

1     sanding work overhead" (AR at 17 (citing AR at 381, 386)), and that his mental symptoms did

2     not prevent him from maintaining a romantic relationship and getting married, spending time

3     with friends, using public transportation, and attending weekly AA meetings (AR at 19).

4     Plaintiff argues that his willingness to attempt work should be "commended" rather than found

5     to undermine his credibility, and that none of his activities indicate that he could "reliably and

6     consistently perform at the level commensurate with substantial gainful activity." Dkt. 14 at 8.

7     It may be true that none of the activities cited by the ALJ demonstrate skills

8     transferable to a work environment, but the ALJ cited them as evidence of activities

9     inconsistent with Plaintiff's description of symptoms. This is an appropriate inference, and a

10    clear and convincing reason to discount Plaintiff's credibility. *See Orn v. Astrue*, 495 F.3d

11    625, 639 (9th Cir. 2007) (explaining the two ways in which daily activities can properly

12    undermine a claimant's credibility, one of which is by demonstrating a contradiction with the

13    claimant's testimony).

14           3.     *Medical evidence*

15    Plaintiff claims that the medical evidence is "replete with references to the effects of

16    [his] PTSD and depression on his day-to-day functioning" (Dkt. 12 at 16), and he argues that

17    the ALJ overlooked this evidence when finding that the medical evidence does not support his

18    description of mental symptoms. But none of the evidence cited by Plaintiff actually

19    comments on any restrictions in his "day-to-day functioning"; it records his description of

20    symptoms, without evaluating the impact of those symptoms on his ability to function. The

21    ALJ further noted that the credibility of Plaintiff's testimony regarding the impact of mental

22    symptoms was further eroded by his improvement when compliant with medication (and his

23    exacerbation of symptoms when not compliant) and his activities evincing less social

24    restriction than alleged. In this context, Plaintiff has failed to show that the ALJ's

interpretation of the medical evidence of was not reasonable, and thus her findings regarding the credibility of Plaintiff's testimony regarding mental symptoms should be affirmed. *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

D. <u>The ALJ Provided Germane Reasons to Discount the Lay Evidence.</u>

The ALJ summarized the May 2011 lay statement (AR at 204-11) provided by Plaintiff's friend, Mona Kutch, and explained that she gave it "limited weight" due to inconsistency with medical evidence during the relevant period and inconsistency with Plaintiff's self-reported activities. AR at 19-20. Plaintiff argues that the ALJ misconstrued the record to find evidence inconsistent with Ms. Kutch's statements, but this challenge is meritless. The ALJ cited evidence showing that providers described Plaintiff's back and knee conditions to be "mild" or "mild to moderate" (AR at 17 (citing AR at 266, 1081)), which she construed as inconsistent with Ms. Kutch's description of his arthritis; the ALJ also correctly noted that the record does not contain evidence that Plaintiff "medically requires" a wheelchair or crutch (AR at 19), despite Ms. Kutch's description of his need for these devices "many times" (AR at 204). The ALJ also noted that although Ms. Kutch contended that Plaintiff could not perform housework because of a lack of energy, the record revealed that he stopped performing handyman tasks because work was no longer available. AR at 20 (citing AR at 1300-02). These inconsistencies are germane reasons to discount Ms. Kutch's statement. *See Bayliss*, 427 F.3d at 1218; *Carmickle*, 533 F.3d at 1164.

E. <u>The ALJ Did Not Err in Failing to Call a Medical Expert Regarding Disability Onset.</u>

Plaintiff argues that if the ALJ had appreciated that the VA found him to unemployable as of July 28, 2011, it would have been appropriate to call a medical expert to determine

REPORT AND RECOMMENDATION - 13

whether Plaintiff's disability had onset before his DLI. Dkt. 14 at 9. Plaintiff's argument rests on an inflated view of the import of the VA's finding of unemployability: as explained *supra*, the VA's finding that Plaintiff was unemployable as of July 28, 2011, does not establish that he was disabled before his DLI. Thus, although Plaintiff seems to assign error to the ALJ's focus on "the time frame before March 31, 2011" and her failure to consider whether he became disabled "after this period" (Dkt. 14 at 9), the ALJ properly limited the scope of her analysis to the period before Plaintiff's DLI in this DIB-only case. *See* 20 C.F.R. § 404.131. Because the ALJ found that the evidence did not establish that Plaintiff had disabling conditions before his DLI, the ALJ did not need to determine a disability onset date (with or without the assistance of a medical expert). *See* Social Security Ruling 83-20, 1983 WL 31249, at *1 (Jan. 1, 1983) ("A Title II worker cannot be found disabled under the Act unless insured status is also met a time when the evidence establishes the presence of a disabling condition(s).").

F. <u>Plaintiff has Not Established that the ALJ Erred in Assessing His RFC.</u>

Plaintiff reiterates arguments previously rejected in contending that the ALJ's RFC assessment fails to account for all of his limitations. Dkt. 14 at 11. For the reasons explained *supra*, Plaintiff has failed to establish that the ALJ erred in assessing the medical evidence or the subjective testimony of record. Plaintiff has not shown that the ALJ's vocational expert ("VE") hypothetical failed to include any credited limitations, or that the ALJ was not entitled to rely on the VE's testimony identifying other jobs at step five, and thus this final assignment of error fails. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).

//

//

//

//

VIII.   CONCLUSION

For the foregoing reasons, the Court recommends that this case be AFFIRMED.  A proposed order accompanies this Report and Recommendation.

DATED this 22nd day of November, 2013.

*James P. Donohue*
JAMES P. DONOHUE
United States Magistrate Judge